IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS L. KALTENBRONN, D.C., COY CHIROPRACTIC HEALTH CENTER, and DALE A. FISCHER, D. C., individually and on behalf of others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY MUTUAL FIRE INSURANCE COMPANY, d/b/a LIBERTY MUTUAL GROUP, )<br><br>Defendants. ) | Case No. 07-0052-MJR |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Before the Court is Plaintiffs' Motion to Remand (Doc. 12). The matter is fully briefed and ready for disposition.

### I.   Factual Background/Procedural History

On January 19, 2007, Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively, "Liberty") removed this action from the Circuit Court, Third Judicial Circuit, Madison County, Illinois. This putative nationwide class action is based on Liberty's alleged improper discounting of a class of licensed healthcare providers' bills for medical services rendered to persons covered by Liberty's property and casualty insurance policies.

Plaintiffs allege that Liberty wrongfully and deceptively reduces payments to

1

Plaintiffs by claiming the benefits from purported Preferred Provider Organization ("PPO") agreements without any evidence that valid PPO agreements exist and/or without performing the associated obligation of "preferring" the affected healthcare providers to their insureds/beneficiaries through financial incentives designed to channel patients to Plaintiffs. Plaintiffs state that Liberty is not entitled to retain these monies, nor is it otherwise entitled to any PPO discounts from Plaintiffs and the Class. Plaintiffs state that the improper practice employed by Liberty is known in the insurance industry as a *"silent PPO."*

The **Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005)** ("CAFA"), expressly applies to class actions commenced on or after its enactment. This class action was commenced by Plaintiff Kaltenbronn on December 27, 2004, almost two months before the enactment of CAFA. The original complaint alleged three causes of action: violation of the Illinois Consumer Fraud Act, civil conspiracy and unjust enrichment. Liberty moved to dismiss; however, its motion was not called for hearing. On May 19, 2006, First Amended Class Action Complaint was filed, adding three new plaintiffs: Coy Chiropractic Health Services, Dr. Frank C. Bemis & Associates and Dale A. Fischer, D. C. Other than the addition of these Plaintiffs, the First Amended Complaint was identical to the original Complaint.

On December 20, 2006, Plaintiffs filed their second amended complaint which reiterated the three counts raised in the earlier pleading and added a count, in the alternative, for breach of contract. Plaintiffs' second amended complaint also contained new allegations of fraudulent concealment, asserting that "[t]he running of the statute of limitations has been suspended with respect to any claims that Plaintiffs or other members of the Class have brought or could have brought as a result of the unlawful and fraudulent course of conduct described herein." Second Am.

Compl., ¶ 48. Thereafter, Liberty removed the case.

In Plaintiffs' second amended complaint, they allege that Liberty improperly discounted bills for medical services rendered to persons covered by Liberty's property and casualty insurance policies based on a purported PPO reduction. Second Am. Compl., ¶ 1. Plaintiffs state that Liberty does not dispute the reasonableness or necessity of the medical charge nor that the treatment is for injuries relating to covered losses; rather, Liberty systematically takes improper PPO reimbursement reductions on its payments for medical treatment without any valid right to do so. *Id.* at ¶ 2. According to Plaintiffs, Liberty wrongfully and deceptively reduced payments to them and other licensed healthcare providers by claiming the benefits from purported PPO agreements without any evidence that valid PPO agreements exist and/or without performing the associated obligation of "preferring" the effected healthcare providers to their insureds/beneficiaries through financial incentives designed to channel patients to Plaintiffs. *Id.* at ¶ 3. Plaintiffs assert that Liberty has illegally reaped huge savings while giving no consideration to healthcare providers for the right to apply these discounts. *Id.* at ¶ 42. Plaintiffs state that the improper practice employed by Liberty is known in the insurance industry as a "silent PPO." *Id.* at ¶ 16.

Plaintiffs argue that this Court lacks jurisdiction because the CAFA does not apply to cases commenced before its enactment. According to Plaintiffs, the second amended complaint added an additional theory of recovery arising from the same conduct but did not commence a new civil action. Liberty responds that the addition of a new claim for breach of contract in Plaintiffs' second amended complaint commenced a new, removable cause of action. Because the statute of limitations for a breach of contract claim is ten years, Liberty contends that the second amended complaint expanded claims to challenge conduct that occurred prior to December, 1999, *i. e.*, in

3

"1997, 1998 or the first 11 months of 1999." Doc. 22, p. 3. Also, Liberty states that Plaintiffs alleged for the first time that Liberty had fraudulently concealed its practices from Plaintiffs and that this fraudulent concealment tolled the statute of limitations with respect to any claims that Plaintiffs brought or could have brought against Liberty. *Id*.

## II. Legal standards

### A. Removal

Removal of actions from state court to federal court is governed by 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." **28 U.S.C. § 1441(a)**. The defendant has the burden of establishing that an action is removable, and doubts concerning removal must be resolved in favor of remand to the state court. *See Brill v. Countrywide Home Loans, Inc.*, **427 F.3d 446, 448 (7th Cir. 2005)**.

### B. Diversity Jurisdiction under the CAFA

Under the CAFA, federal courts have jurisdiction in diversity, with exceptions not at issue here, *see* **28 U.S.C. § 1332(d)(3), (d)(4), (d)(5), (d)(9)**, over class actions with one hundred or more class members, *see* **28 U.S.C. § 1332(d)(5)(B)**, in which any member of the plaintiff class is a citizen of a state different from that of any defendant, or any member of a plaintiff class or any defendant is a foreign state or a citizen or subject of a foreign state. *See* **28 U.S.C. § 1332(d)(2)**. In a class action in which the CAFA's requirement of minimal diversity is met, a federal court has jurisdiction if, after aggregating class members' claims, more than $5 million, exclusive of interest and costs, is in controversy. *See* **28 U.S.C. § 1332(d)(2), (d)(6)**. Class actions filed in state court

that satisfy the jurisdictional prerequisites of the CAFA are subject to removal to federal court. *See* **28 U.S.C. § 1453(a), (b)**.

### III. Discussion

"The CAFA is not retroactive and therefore only applies to class actions which are 'commenced on or after the date of enactment' of the statute, February 18, 2005." *Schillinger v. 360 Networks USA, Inc.*, **Civil No. 06-138-GPM, 2006 WL 1388876, at \*2 (S.D. Ill. May 18, 2006) (quoting Pub. L. 109-2, § 9, 119 Stat. 4)**. In general, a class action is commenced for purposes of removal under the CAFA on the date it originally was filed in state court. *See Knudsen v. Liberty Mut. Ins. Co.*, **411 F.3d 805, 806 (7th Cir. 2005)**. In some instances, however, an amendment to a complaint may commence (or perhaps more correctly, recommence) a class action after the effective date of the CAFA so as to make the action removable under the statute. "An amended complaint kicks off a new action only if, under the procedural law of the state in which the suit was filed, it does not 'relate back' to the original complaint." *Santamarina v. Sears, Roebuck & Co.*, **466 F.3d 570, 573 (7th Cir. 2006) (citations omitted)**.

"The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Id*. **(citations omitted)**. Under Illinois law, as under federal law, an amendment "relates back" when it arises out of "the same transaction or occurrence set up in the original pleading." **735 ILCS 5/2-616(b);** *Chandler v. Illinois Central R.R.,* **207 Ill.2d 331, 346 (Ill. 2003);** *see* **FED. R. CIV. P. 15(c);** *Schorsch v. Hewlett-Packard*, **417 F. 3d 748, 751 (7th Cir. 2005);** *Delgado-Brunet v. Clark,* **93 F.3d 339, 343 (7th Cir. 1996)**. Illinois courts have also found that "an amendment relates back

. . . when the original complaint 'furnished to the defendant all the information necessary . . . to prepare a defense to the claim subsequently asserted in the amended complaint.'" ***Boatmen's National Bank of Belleville v. Direct Lines, Inc.,* 167 Ill.2d 88, 102, 656 N.E.2d 1101, 1107 (Ill. 1995);** *Pierce v. Joe Keim Builders, Inc***. 274 Ill.App.3d 371, 374, 653 N.E.2d 928, 931(Ill.App. 1995) (citations omitted) ("Thus, an amended complaint relates back only when the original complaint supplies defendant with all of the information necessary to prepare the defense to the claim asserted in the amended pleading.")**.  The focus is not on the nature of the cause of action pled but on the identity of the transaction, *i. e.*, ". . . if the defendant has been made aware of the occurrence or transaction which is the basis for the claim, he will be able to defend against the plaintiff's claim, whatever theory it may be predicated upon." *Pierce***, 274 Ill.App.3d at 374, 653 N.E.2d at 931 (citations omitted)**.

Liberty first contends that Plaintiffs' second amended complaint asserted a new claim for breach of contract and, thus, commenced a new, removable action.  Liberty argues that its method of referring its clients to Plaintiffs differed in significant ways during the relevant time period.  Before 1997, Liberty produced and distributed, on a quarterly basis, printed directories that identified participating providers.  From 1997 through the first quarter of 1999, Liberty's referral system was based on desktop computers.  Since April, 1999, Liberty has used an internet-based system that identifies participating providers by location and specialty.  On this basis, Liberty argues that determining whether the earlier methods of encouraging referral to Plaintiffs were reasonable would not depend on the same proof as a similar determination about the internet system.

This is a thin reed to lean upon and fails to support Liberty's burden of establishing that this action is removable.  Liberty's argument loses sight of the fact that it was always aware that

the gravamen of Plaintiffs' complaint was breach of contract. In its Notice of Removal, Liberty acknowledged, "While the gravamen of the Original Complaint and the First Amended Complaint was that Liberty had breached an implied contractual obligation to plaintiffs, neither pleading contained a breach of contract cause of action nor sought damages for breach of contract." Doc. 2, ¶ 5. Thus, Liberty concedes that it had knowledge that the gravamen of Plaintiffs' Complaint was breach of contract and, furthermore, concedes that the gravamen did not change when the Complaint was amended. The Court notes that the original complaint and the first and second amended complaints repeatedly reference the agreements among the providers, the provider networks and their affiliated payors, and also reference Liberty's obligations under these agreements. *See, e. g.,* First Am. Compl. ¶¶ 14-17. As such, Liberty was "made aware of the occurrence or transaction which is the basis for the claim," such that it would "be able to defend against the plaintiff[s'] claim, whatever theory it may be predicated upon." ***Pierce*, 274 Ill.App.3d at 374, 653 N.E.2d at 931**. Rather than being surprised by the amplification of the allegations, Liberty was well aware of the nature and scope of Plaintiffs' complaint. ***See Santamarina,* 466 F.3d at 573**. Liberty has identified no basis for the Court to conclude that the addition of the breach of contract claim commenced a new, removable action.

Liberty's contention that Plaintiffs' addition of a factual allegation commenced a new action is equally unavailing. Liberty asserts that Plaintiffs' claim of fraudulent concealment is a new claim based on transactions and occurrences not pleaded in the earlier complaints. Liberty is correct in that Plaintiffs, in their second amended complaint, allege, for the first time, "The running of the statute of limitations has been suspended with respect to any claims that Plaintiffs or other members of the Class have brought or could have brought as a result of the unlawful and fraudulent course

of conduct described herein." Second Am. Compl. ¶ 48.

Liberty asserts that this constitutes a different transaction or occurrence, such that this case should be remanded, because it challenges, for the first time, transactions taken in 1994, 1995 and the first 11 months of 1996. The gravamen of Plaintiffs' action remains the same, however, despite the addition of a claim that Liberty concealed its silent PPO operation. Plaintiffs have not, by the addition of this claim, propounded a claim "sufficiently distinct" such that the Court would treat it as a new piece of litigation. ***Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 807 (7th Cir. 2005)**; *see also Comes v. Microsoft Corp*., **403 F.Supp.2d 897, 903 (S.D. Iowa 2005) (additional allegations set forth in four paragraphs of a 94-page complaint did not create a "wholly distinct claim" such that it has commenced a new civil action under the CAFA.)**. As the Seventh Circuit Court of Appeals stated in *Schorsch,* "workaday changes routine in class suits" do not "kick off wholly distinct claims." **417 F.3d at 751**.

Plaintiffs' second amended complaint relates back to the first amended complaint filed prior to the enactment of CAFA, in that the first amended complaint "furnished to the defendant all the information necessary . . . to prepare a defense subsequently asserted in the amended complaint." ***Id.* (***citing Boatmen's National Bank of Belleville v. Direct Lines, Inc.,* 167 Ill.2d 88, 102, 656 N.E.2d 1101, 1107 (Ill. 1995)**.

### IV. Conclusion

Accordingly, since this Court lacks subject matter jurisdiction, the Court **GRANTS** Plaintiffs' Motion to Remand (Doc. 12) and **REMANDS** this case to the Circuit Court of Madison County, Illinois. The Court declines to award costs of removal under **28 U.S.C. § 1447(c)**, in the

wake of the United States Supreme Court's holding in ***Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)**. All pending motions [Docs. 6, 32, 37, 39 and 41] are **DENIED as moot**.

       **IT IS SO ORDERED.**

       **DATED this 24th day of September, 2007**

                             <u>s/Michael J. Reagan</u>
                             **MICHAEL J. REAGAN**
                             **United States District Judge**